UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
─────────────────────────────────────────x
In re:                                    :
                                          :
LEATHERSTOCKING ANTIQUES, INC.,           :
                                          :
                              Debtor.     :
                                          :
──────────────────────────────────────────
                                          :
RUBIN STERNGASS,                          :         **OPINION AND ORDER**
                                          :
                          Appellant,      :         **13 Civ. 5609 (ER)**
                                          :
              v.                          :
                                          :
MARIANNE T. O'TOOLE, as Chapter 7 Trustee :
of the Estate of Leatherstocking Antiques, Inc., :
                                          :
                          Appellee.       :
─────────────────────────────────────────x

Ramos, D.J.:

    *Pro se* Appellant Rubin Sterngass ("Sterngass" or "Appellant") appeals from a May 13, 2013 Order (the "Order") of the United States Bankruptcy Court for the Southern District of New York, Judge Robert D. Drain. Doc. 1.[1] The Order approves an August 20, 2012 stipulation (the "Winston Stipulation") between the Chapter 7 Trustee of the Estate of Leatherstocking Antiques, Inc. ("Leatherstocking" or the "Estate") and one of the Estate's creditors, Winston Capital, LLC ("Winston"). Bankr. Doc. 165. The Order was entered over Appellant's objection, and this appeal followed. By separate motion, and as will be discussed in more detail below, Appellant also seeks relief in the form of reconsideration, a temporary restraining order, and an

---

[1] References to "Doc." refer to documents filed in the instant appeal. References to "Bankr. Doc." refer to documents filed in the underlying bankruptcy proceeding, In re: Leatherstocking Antiques, Inc., No. 10-22704 (RDD).

injunction.  Doc. 7.  For the reasons set forth below, the Bankruptcy Court's Order is AFFIRMED and Appellant's motion is DENIED.

I.  **Background**

On April 13, 2010, Leatherstocking[2] filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  Bankr. Doc. 1.  On Schedule "A" to its petition, Leatherstocking listed a fee simple interest in the following six properties (collectively, the "Properties"):

- 701-705 A Route 9W, Valley Cottage, New York 10989 (the "701-705 A Property");
- 707-709 Route 9W, Valley Cottage, New York 10989 (the "707-709 Property");
- 17 High Street, Valley Cottage, New York 10989 (the "17 High Property");
- 719 Route 9W, Valley Cottage, New York 10989 (the "719 Property");
- 741 Route 9W, Valley Cottage, New York 10989 (the "741 Property"); and
- 749 Route 9W, Valley Cottage, New York 10989 (the "749 Property").

*Id.*  Schedule "D" lists Winston as a secured creditor holding an $800,000 disputed first mortgage secured by certain of the Properties.  *Id.*

Approximately two years later, on May 18, 2012, Leatherstocking's case was converted from Chapter 11 to Chapter 7 of the Bankruptcy Code (the "Conversion Order").  Bankr. Doc. 70.  By operation of law, the Conversion Order became a final, non-appealable Order on June 1, 2012.  Subsequent to the Conversion Order, the Trustee was appointed as the interim Chapter 7 Trustee, then duly qualified, and is now the permanent Trustee of Leatherstocking's estate.  Bankr. Doc. 71.

On July 27, 2012, the Trustee moved for entry of an Order authorizing the sale of the Properties pursuant to Bankruptcy Code §§ 105 and 363 and Bankruptcy Rules 2002 and 6004

---

[2] Sterngass is Leatherstocking's former president and CEO.

2

(the "Sale Motion"), Bankr. Doc. 89, and caused a notice of sale of the properties (the "Notice of Sale") to be filed with the court. Bankr. Doc. 91. The Notice of Sale provided notice to all interested parties of the Trustee's intended public auction sale of the Properties, the date, time, and location of the auction sale, the terms and conditions of the auction sale, and the deadline for objections to be filed to the auction sale. *Id.* Sterngass objected to the Notice of Sale. Bankr. Docs. 97, 99.

The auction sale was held on August 21, 2012. On that same date, a hearing was held before the Bankruptcy Court. *See* Bankr. Doc. 115. Sterngass appeared and argued against the Sale Motion. *See id.* The Bankruptcy Court approved the Sale Motion over his objections and, on August 24, 2012, entered three Orders approving the sales ("the Sale Orders"). Bankr. Docs. 101-103. Sterngass did not seek or obtain stays of the Sale Orders pending appeal.

On September 17, 2012, the Trustee closed on the sales of the 17 High Property, the 741 Property and the 749 Property. On September 21, 2012, the Trustee closed on the sales of the 719 Property, the 701-705 A Property and the 707-709 Property. This Court dismissed Sterngass's subsequent appeal of the Sale Orders as statutorily and equitably moot. *In re Leatherstocking Antiques, Inc.*, No. 12 CIV. 7758 ER, 2013 WL 5423995 (S.D.N.Y. Sept. 27, 2013).

On August 24, 2012, three days after the auction sale, the Trustee filed a notice of presentment of the Winston Stipulation. Bankr. Doc. 104. The Stipulation indicates that, as of the petition date, Winston's claim was worth $1,048,152.22 and was secured by the 701-705 A Property, the 707-709 Property, and the 17 High Property (the "Subject Properties"). *Id.* Winston claimed that, as of August 31, 2012, it would be owed $1,518,218.89; the Trustee disputed that amount. *Id.* In any event, the sale of the Subject Properties was not expected to

yield enough proceeds to cover the Winston claim along with the administrative costs and outstanding real estate taxes. *Id.* The Winston Stipulation therefore fixed and allowed Winston's claim at the lower $1,048,152.22 amount. *Id.* In addition, it provided that the following amounts would be carved-out from the sales proceeds and retained by the Trustee: (1) the amount of the unpaid real estate taxes for the Subject Properties as of the closing date; (2) the amount due to the auctioneer; and (3) 10% for the benefit of the Estate (to cover the Trustee's commissions and expenses, counsel's fees and expenses, and the Estate's creditors). *Id.*

Sterngass objected to the Winston Stipulation and filed three documents with the Bankruptcy Court in advance of the scheduled hearing. Bankr. Docs. 109, 113, 117. The Bankruptcy Court heard oral arguments on May 2, 2013 and approved the Winston Stipulation over Sterngass's objections. *See* Bankr. Doc. 167 ("Bankr. Tr.").[3]

During the hearing, the Trustee's counsel explained that "the Trustee did not think it was worthwhile to commence litigation" over the potential defenses Sterngass had raised in his objections and that the Trustee believed the Winston Stipulation was "in the best interests of the estate" and "certainly is a good result for the estate." *Id.* at 9-10. The Bankruptcy Court considered Sterngass's objections, which it summarized as follows:

> First, you contend that there was a misrepresentation in connection with the loan by the Town of Clarkstown. Second, you contend there was a misrepresentation in connection with the loan by the fact that one of the signatories to the loan was you on behalf of your deceased wife. Third, you contend that Winston did not obtain the refinancing of the loan after a year, and related to that, Winston did not draw on this [insurance] policy that you've described to me.

*Id.* at 15. Sterngass confirmed on the record that this summary fairly represented the nature of his objections. *Id.*

---

[3] A copy of the transcript is also attached as Exhibit A to the Trustee's Brief in the instant appeal. Doc. 11.

4

The Bankruptcy Court noted that, in order to approve a settlement, it need not conduct a trial but should instead

> consider whether the settlement falls within the lowest bounds of reasonableness and is in the best interests of the estate, taking into account the merits of the claim and the Trustee's objections to the claim, the costs of pursuing those arguments, whether the matter is negotiated at arm's length, and all of [sic] this is not relevant here, the issue of collection.

*Id.* at 23. In announcing its ruling, the Bankruptcy Court found that "the settlement is, in fact, fair and reasonable and in the best interests of the estate." *Id.* The court noted that it had reviewed the documents Winston submitted during an earlier stage of the proceedings and did not believe that there were "any documentary infirmities in Winston's loan documents or mortgage, vis-à-vis the debtor, Leatherstocking Antiques, Inc." *Id.* The court went on to find that the mortgage was valid, that Leatherstocking "was not defrauded in any way as far as I can see," and that there was no provision in the mortgage indicating that it would be unenforceable if the debtor could not obtain refinancing. *Id.* at 23-24. Thus, the court ruled as follows with respect to Sterngass's objections sounding in fraud:

> So at best the Trustee would be pursuing, or [sic] a claim based on oral representations contradicted by a written agreement that some way, shape, or form Winston Capital agreed not to assert its rights under the documents as they're written but rather agreed to wait for some uncertain period beyond a year to let the debtor try to refinance the mortgage. I believe it was imprudent for the Trustee to have turned down the settlement that she entered into and instead, alternatively, to have pursued such a claim.
>
> To the extent that the allegation of fraud in Mr. Sterngass' objection is premised upon a fraud by the Village of Clarkstown, that obviously does not affect the merits of Winston's claim or mortgage.

*Id.* at 24. The court similarly overruled the portion of Sterngass's objection that alleged the existence of an insurance policy that would cover the Winston claim, finding that "[t]here's literally no evidence of such a policy" and that "[t]he Trustee was well within her discretion in

not trying to track down such a policy and instead settling with the only party in interest who's actually asserted a claim." *Id.* at 24-25.

The formal Order overruling the Sterngass objections and approving the Winston Stipulation was filed on May 13, 2013. Bankr. Doc. 165.

## II. Procedural Background

Sterngass filed a notice of appeal on May 28, 2013. Bankr. Doc. 175. On June 11, 2013, he then filed an extensive statement of issues and designation of items for inclusion in the record on appeal. Bankr. Doc. 177. On the Trustee's motion (Bankr. Doc. 186) and over Sterngass's objection (Bankr. Doc. 188), the Bankruptcy Court struck Appellant's designation and directed the Trustee to file a designation and statement of issues. Bankr. Doc. 192. The Trustee did so on August 7, 2013, framing the issue to be presented as follows: "In entering the Order, did the Bankruptcy Court properly overrule Appellant's objection and approve the Stipulation as being fair, equitable, and in the best interests of the estate, and a proper exercise of the Trustee's business judgment?" Bankr. Doc. 196.

The appeal was docketed before this Court on August 12, 2013. Doc. 1. On August 21, 2013, Appellant filed an objection and reply to the Trustee's statement of the issue and designation of items for inclusion in the record. Doc. 4. On December 26, 2013, Appellant filed his motion for reconsideration, a temporary restraining order, and injunctive relief. Doc. 7. The Court held a status conference on January 7, 2014, at which time the parties were given a preliminary opportunity to present their arguments and a formal briefing schedule was set. *See* Doc. 8 ("Conf. Tr.").

### III. Discussion

#### A. Standard of Review

This Court has jurisdiction to hear appeals from decisions of a bankruptcy court pursuant to 28 U.S.C. § 158(a), which provides in relevant part that "[t]he district courts of the United States shall have jurisdiction to hear appeals . . . from final judgments, orders, and decrees; . . . [and,] with leave of court, from other interlocutory orders and decrees . . . of bankruptcy judges." 28 U.S.C. § 158(a). A district court reviews a bankruptcy court's findings of fact for clear error and its conclusions of law *de novo*. *Overbaugh v. Household Bank, N.A. (In re Overbaugh)*, 559 F.3d 125, 129 (2d Cir. 2009) (per curiam); *see* Fed. R. Bankr. P. 8013 (providing that a district court "may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree," and that "[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous").

The federal bankruptcy courts are authorized to approve settlements upon motion by the trustee, after notice, and after a hearing. Fed. R. Bankr. P. 9019. A bankruptcy court's articulation of the legal standard used to evaluate the settlement is a matter of law to be reviewed *de novo* on appeal, while the court's application of those legal principles—in other words, its decision to approve the particular settlement at hand—is reviewable only for abuse of discretion. *See Krys v. Official Comm. of Unsecured Creditors of Refco Inc. (In re Refco Inc.)*, 505 F.3d 109, 116 (2d Cir. 2007) (citing *Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452, 461 n.13 (2d Cir. 2007)).

### B. The Bankruptcy Court Applied the Correct Legal Standard in Deciding Whether To Approve the Winston Stipulation[4]

As a threshold matter and on *de novo* review, the Court finds that the Bankruptcy Court applied the correct legal standard in its review of the Winston Stipulation. The bankruptcy judge's role "is not to decide the numerous questions of law and fact raised by appellants but rather to canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'" *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983) (alteration in original) (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). In making this assessment, the Bankruptcy Court must develop an "intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated" and "should form an educated estimate of the complexity, expense, and likely duration of such litigation, the possible difficulties of collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise." *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968). This analysis requires a comparison of the terms of the settlement and the "likely rewards of litigation." *Id.* at 424-25.

---

[4] The Court notes that the sole issue before it on appeal is the one set forth in the Trustee's counterstatement—namely, whether the Bankruptcy Court properly approved the Winston Stipulation over Appellant's objections. Appellant has submitted a vast array of arguments and supporting documents; although the Court has reviewed all of Appellant's submissions, in ruling on the appeal it considers only those that are responsive to the narrow issue at hand. To the extent that Appellant raises arguments not specifically targeted at the Winston Stipulation and instead objects to and seeks to unwind matters that were resolved at prior stages of the bankruptcy proceeding—including, *inter alia*, objections to the conversion from Chapter 11 to Chapter 7—those matters are not properly before this Court and therefore will not be considered. For the same reason, Appellant's objections to the Trustee's statement of the issue and designation of items for inclusion in the record are overruled. Finally, the Court notes that almost all correspondence received from Appellant includes a footnote indicating that he is appearing *pro se* on behalf of himself and Leatherstocking; however, as Appellant has been advised on multiple occasions and in multiple forums (including this one), he is legally barred from representing the corporation. *See, e.g.*, Conf. Tr. at 15-16. Appellant's arguments to the contrary notwithstanding, *see* Appellant's Br. (Doc. 10) at 7, there is no basis for revisiting this issue at the present time. *See Pridgen v. Andresen*, 113 F.3d 391, 393 (2d Cir. 1997) (noting that "it is well established that a layperson may not represent a corporation").

In light of the Supreme Court's ruling in *TMT Trailer Ferry*, courts in this Circuit consider the following factors in assessing the reasonableness of a proposed settlement:

> (1) the balance between the litigation's possibility of success and the settlement's future benefits; (2) the likelihood of complex and protracted litigation, "with its attendant expense, inconvenience, and delay," including the difficulty in collecting on the judgment; (3) "the paramount interests of the creditors," including each affected class's relative benefits "and the degree to which creditors either do not object to or affirmatively support the proposed settlement"; (4) whether other parties in interest support the settlement; (5) the "competency and experience of counsel" supporting, and "[t]he experience and knowledge of the bankruptcy court judge" reviewing, the settlement; (6) "the nature and breadth of releases to be obtained by officers and directors"; and (7) "the extent to which the settlement is the product of arm's length bargaining."

*Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452, 462 (2d Cir. 2007) (alteration in original) (quoting *In re WorldCom, Inc.*, 347 B.R. 123, 137 (Bankr. S.D.N.Y. 2006)).

Based on the record of the May 2, 2013 hearing, it is clear that any objections Appellant may have to the Bankruptcy Court's articulation of the applicable legal standard are without merit. *See, e.g.*, Appellant's Reply (Doc. 13) at 4 (faulting Judge Drain for reaching conclusions regarding the validity of the mortgage documents without conducting a trial). Judge Drain expressly referenced and considered the standards set forth in *TNT Trailer Ferry* and its progeny, and his statement of the law comports with the standard set forth above. *See* Bankr. Tr. at 22-23. The only question, then, is whether the Bankruptcy Court abused its discretion in *applying* that law to the facts at hand.

### C. The Bankruptcy Court's Approval of the Winston Stipulation Was Not an Abuse of Discretion

Having reviewed both the proceedings below and the various submissions offered on appeal, the Court concludes that the Bankruptcy Court was well within its authority—and did not abuse its discretion—in approving the Winston Stipulation. Judge Drain conducted a thorough

hearing at which he reviewed the contents of the Stipulation, allowed both parties to be heard at length, and considered each of Appellant's objections to the Stipulation prior to rendering his decision. He observed that the Winston Stipulation reduced Winston's claim by approximately one-third while also providing for costs, expenses, *and* a further carve-out for the benefit of the Estate. He determined that the defenses Sterngass proffered were tenuous at best; indeed, he ruled that it would have been *imprudent* for the Trustee to have turned down the settlement in order to fully litigate those defenses. Contrary to Appellant's assertion that Judge Drain merely "relied upon the Chapter 7 Trustee's . . . claim that the Winston mortgage was valid," Appellant's Reply at 3, Judge Drain expressly stated that he had personally "reviewed the documents submitted by Winston in connection with its lift-stay motions in this case" and did not find any infirmities in the loan documents or mortgage as those documents pertain to Leatherstocking. Bankr. Tr. at 23. In other words, Judge Drain did *not* simply accept the Trustee's representations; rather, the outcome reflected the "'informed, independent judgment' of the bankruptcy court." *TMT Trailer Ferry*, 390 U.S. at 424 (quoting *Nat'l Sur. Co. v. Coriell*, 289 U.S. 426, 436 (1933)).

In light of his review of the mortgage documents, Judge Drain determined that, at best, there was a potential defense based on alleged oral representations that contradicted what appeared in the written loan documents. He correctly observed that it would have been against the Estate's interests to have pursued this avenue rather than consenting to the settlement (which, as Judge Drain notes, secures several concessions for the benefit of the Estate and its creditors). Judge Drain was also correct in finding that any allegations of fraud on the part of the Village of Clarkstown in no way bear on the validity of *Winston's* mortgage interest in the Subject

Properties.[5]  Finally, Judge Drain considered Sterngass's position regarding the insurance policy that he maintains would have covered Winston's claim.  Given the current record, Judge Drain's skepticism on this point was warranted, and he did not abuse his discretion by finding that the Trustee was justified in opting to settle rather than search for the purported policy.

In short, nothing in the record below or in the arguments presently before the Court undermines the reasonableness of the Trustee's decision to enter into—let alone the Bankruptcy Court's approval of—the Winston Stipulation.  Finding no infirmity in the May 13, 2013 Order of the Bankruptcy Court, the Court affirms the decision below.

### D. Appellant's Motion for Reconsideration, a Temporary Restraining Order, and Injunctive Relief Is Without Merit

During the status conference held in conjunction with the instant appeal, Appellant indicated that his motion for reconsideration, a temporary restraining order, and injunctive relief challenges the Bankruptcy Court's jurisdiction and asks "for the Article III status of the District Court to intervene on its own, as an original action, as an Article III court or acting sua sponte and handling it and setting aside by an injunction everything that has transpired in the Bankruptcy Court."  Conf. Tr. at 6.  In other words, based largely on his *res judicata* argument concerning the purported effect of the New York Court of Appeals' decision in *Town Board of the Town of Clarkstown v. Sterngass*, 357 N.E.2d 1017 (N.Y. 1976), Appellant argues that the bankruptcy action should have been brought in an Article III court in the first instance.  This claim is without merit.  To the extent that the Court of Appeals' decision gave rise to any vested

---

[5] Throughout his papers, and as he has done at various other stages of the bankruptcy proceeding (and, it appears, in parallel proceedings in other jurisdictions), Appellant argues that the decision of the New York Court of Appeals in *Town Board of the Town of Clarkstown v. Sterngass*, 357 N.E.2d 1017 (N.Y. 1976), is *res judicata* as to the current proceedings.  That decision, however, dealt with certain municipal zoning and permitting requirements and does not impact any potential defenses that the Estate may have had against Winston.  It is therefore inapposite to the Court's present inquiry, which, as indicated above, is confined to the Bankruptcy Court's assessment of the reasonableness of the Winston Stipulation.

rights, those rights neither undermine the jurisdiction of the Bankruptcy Court with respect to Leatherstocking nor affect the administration of its Estate in bankruptcy.

In his papers, Appellant refers to various other forms of sought-after relief, including, *inter alia*, a temporary restraining order to prevent Winston from moving for summary judgment in an action currently pending in New York state court, interpleader of various non-parties, and transfer of certain parallel actions to this Court.  *See* Appellant's Br. (Doc. 10) at 14, 19, 20.[6] There is no basis for the Court to grant such relief.  The Court's jurisdiction over this matter is limited to its review of the Bankruptcy Court's May 13, 2013 Order and is therefore coterminous with its resolution of the instant appeal.  In any event, the mere fact that Appellant seeks district court review of the Order does not invest this Court with jurisdiction over separate actions, particularly ones in other jurisdictions, pending between these or related parties, and it certainly does not permit the Court to compel non-parties to participate in this bankruptcy appeal.[7]

Appellant's motion is therefore denied.  Appellant is advised to heed Judge Drain's admonition against using the ongoing bankruptcy proceedings and appeals therefrom as opportunities to revisit prior actions of the Bankruptcy Court or to object to the conduct of the Town of Clarkstown and other non-parties more generally.  Bankr. Tr. at 42-50.  The Court shares Judge Drain's view that further efforts to revisit these extraneous issues would result in a needless expenditure of resources, to the detriment of both the Estate and its creditors.

---

[6] Appellant also requests "finality in the form of Mandamus, injunction, damages, plus punitive damages in this matter."  Appellant's Reply at 14.  Injunctive relief is denied for the reasons set forth above, and the Court finds no basis in the record to mandamus the Bankruptcy Court (or any other entity) or to award any form of monetary relief.

[7] Relatedly, the Court notes that Appellant submitted two sets of correspondence to this Court after the instant appeal was already fully briefed.  The first, dated April 24, 2014, objects to an Order issued by the Bankruptcy Court (setting the deadline for filing proofs of Chapter 11 administrative expense claims) subsequent to the Order currently on appeal.  The second, dated April 25, 2014, relates to matters pending in a parallel action in the Supreme Court of the State of New York, Rockland County.  As the instant appeal does not confer on this Court any jurisdiction with respect to the state court action or the underlying bankruptcy proceedings more generally, the materials contained in these submissions are inapposite for present purposes.

## IV. Conclusion

For the reasons set forth above, the May 13, 2013 Order of the Bankruptcy Court is AFFIRMED and Appellant's motion for reconsideration, a temporary restraining order, and an injunction is DENIED. The Clerk of the Court is respectfully directed to docket this decision, terminate the motion (Doc. 7), and close the case.

It is SO ORDERED.

Dated:   July 21, 2014
         New York, New York

_____
Edgardo Ramos, U.S.D.J.